MONCURE, J.,
after stating the case, proceeded:
The appellant has no cause to complain, and does not complain, of the decree of the court below directing the issues. No exception having been taken to the verdict, and the court having rendered a decree thereon, the facts found therein must be regarded as the established facts of the case. Whether the testator stood in loco parentis, in relation to his nephew Boak; and whether the legacy was a portion, and the donation of the bonds, receipts and other evidences of debt was of such a nature as that, standing by itself, it would have been considered an advancement in satisfaction of the legacy; are questions which need not be answered in this case. For assuming them to be answered in favor of the appellant, that is in the affirmative, I am still of opinion that, according to the facts found by the jury, the case is in favor of the appellee. If from the mere fact of the donation of the bonds, receipts, &c., an intention on the part of the testator to satisfy the legacy to Boak would have been presumed, certainly the presumption would have been repelled by proof of a contrary intention. This is admitted by the counsel for the appellant. The question is one of intention, on all the facts of the case. The verdict expressly finds a contra^intention *in this case. It finds not only the fact of the donation of the bonds, &c., but that they were given for the purpose of discharging Boak from all accountability for the same as one of the legatees in his future settlement with the executor. The will had directed that Boak should be charged with the bonds, &c., in the settlement of his legacy. The established purpose of the donation was to discharge him from all accountability for the bonds, &c., in such settlement. The necessary consequence is that he is entitled to the legacy without any deduction on account of the bonds, &c. : just as if the debt had been paid by Boak, instead of given up to him; or as if the testator had made a codicil, releasing the debt and saying it was not to be deducted in the settlement of the legacy. The testator, by giving the legacy subject to a deduction of the debt, did not deprive himself of the power of afterwards receiving the debt; or giving it to the debtor, by a donation inter vivos, or mortis causa, or by a codicil: And if so received or given, the debt 'would be discharged, that part of the will directing a deduction of the debt from the legacy would be revoked, and the debtor would be entitled to the legacy without such deduction: Unless indeed the debt were given in satisfaction of the legacy; in which case the legacy itself would be revoked. I do not see how this matter can be made plainer by argument or by authority: And I do not think there can be any room for doubt as to the right of Boak to the legacy without any deduction for the debt if the donation to the debt was a valid donation. That question I will now proceed briefly to consider.
Whether the donation was valid or not, depends upon whether there was a sufficient delivery of possession to perfect the gift. All gifts, except by will, must be attended by delivery of possession to make them *96 valid. Until such delivery they are inchoate and revocable; *indeed mere nullities. The donation in this case, as found by the jury, was a donatio mortis causa. But there is no difference in this respect between donations mortis causa and inter vivos. The same kind of delivery of possession which is necessary to make good the one, is necessary to make good the other. 1 Roper on Legacies, 19; Ewing v. Ewing, 2 Leigh, 337, 341 and 344. The cases are conflicting in regard to the donation of a debt by the delivery of a bond, note, or other evidence of the debt. I deem it unnecessary to review them, as most or all of them may be seen by reference to 1 Roper on Legacies, by White, ch. 1; 1 Story’s Eq. Ju. § 433, note 3; 2 Id. § 706, 793 a, and notes. The distinction taken by Lord Hardwicke in Snellgrove v. Baily, 3 Atk. R. 214, between a gift by delivery of a bond and a note; saying that the former would be good as a donation mortis causa, but not the latter, though since followed in England, has been repudiated in several of the United States; in which it has been held that bonds, bills of exchange, promissory notes and other choses in action are all equally proper subjects of a valid donation as well causa mortis as inter vivos. 1 Roper on Legacies, p. 16, note 7; 4 Kent’s Com. 447; Wright v. Wright, 1 Cow. R. 598; Constant v. Schuyler, 1 Page’s R. 316; Borneman v. Sidlinger, 15 Maine R. 429; Wells v. Tucker, 3 Binn. R. 366. In some of the states, Massachusetts, and perhaps Connecticut, for example, the distinction taken by Lord Hardwicke seems to have been recognized. Parish v. Stone, 14 Pick. R. 198. In Virginia, bonds, bills, promissory notes, and all other writings obligatory, are assignable, and the assignee may sue in his own name. If they are transferred without a written assignment, the transferee may sue at his own cost, in the name of the party in whom is the legal title; and his right will be recognized and protected by the court against the release or other act of such party. His remedy is *complete at law, and he has no occasion to ask the aid of a court of equity. The principle that a court of equity will not assist a volunteer to complete his title, which in.England may defeat a voluntary transfer of a chose in action not negotiable, would seem to have no application in this state; but a bill, note, or other writing obligatory, is as proper a subject of a valid donation as a bond. Elam v. Keen, 4 Leigh 333, is the only adjudication in this state which seems to have a particular bearing on the subject. In that case, A having a bond in suit, told B he might have it, and gave him the attorney’s receipt. The executor of A received the money, and B brought an action against him for money had and received. The action was sustained, though B had given no consideration for the bond; the delivery of the attorney’s receipt being considered a sufficient delivery to complete the gift of the bond. Judge Carr recognized the distinction taken by Lord Hardwicke in Ward v. Turner, 2 Ves. sen. 431, between such a constructive or symbolical delivery as was sufficient to pass the right to a chattel sold, and put it at the risk of the vendee, and such a delivery as was necessary to consummate a gift. But he said, ‘ ‘there are many things of which actual manual tradition cannot be made, either from their nature or their situation at the time; it is not the intention of the law to take from the owner the -power of giving these; it mereljr requires that he shall do what, under the circumstances, will, in reason, be considered equivalent to an actual delivery.” He then refers to the case of Jones v. Selby, Prec. in Chan. 300, in which the delivery of the key of a trunk was held to be a sufficient delivery to make a valid gift of a tally of £500 contained in the trunk; and also to Noble v. Smith, 2 John. R. 52, in which Chief Justice Kent said, “the cases in which the delivery of a symbol has been held sufficient to perfect the gift, are those in which it was considered *equivalent to actual delivery; as the key of a room, or of a ware-house, which was the true and effectual way of obtaining the use of the subject. ” Judge Carr considered the receipt as the representative of the bond, which, being in court, could not be delivered; and that, as in the case of the key, the delivery of this receipt was the true and effectual way of obtaining the use of the subject.” These remarks are very appropriate to the case under consideration, and the principle of Elam v. Keen is, I think, decisive of this case.
In the case of Ewing v. Ewing, 2 Leigh 333, a gift of a bond to the obligor was held to be invalid for want of delivei'y: If the bond had been delivered the gift would have been sustained. This is obvious from the opinions of Judges Carr and Green. The former said, “Here it is expressly proved that the bond never was delivered nor any written transfer made.” The latter said, “In the case before us neither the bond in question, nor the money due upon it, could be effectually given or forgiven, or released to the obligor, but by the obligee’s canceling or destroying it with that avowed intention, or surrendering it to the obligor, or to some other for him, or by some instrument in writing to that effect.” See also the case of Dunbar’s ex’ors v. Woodcock’s ex’or, 10 Leigh 628, decided by a Special court of appeals.
A donation of a debt to the debtor himself is entitled to at least as much favor as a donation of the debt to a third person: and a delivery of the evidence of the debt is at least as valid delivery of the debt itself in the former as in the latter case. The delivery of the evidence of the debt to a stranger donee, merely enables him to obtain possession of the subject of the gift; while such a delivery to a debtor donee, ipso facto puts him in possession of the subject; or converts to his own use the possession, which he had hitherto held for the use of his creditor. Indeed, a dona *97 tion of *a debt to the debtor himself has been more favored by courts of equity than a donation to a stranger. _ It is believed there has been no case in which a court of equity has enforced an imperfect gift to a stranger; while there have been various cases in which that court has enforced an imperfect gift of a debt to the debtor. Some of these cases are cited and commented upon in 2 Story’s Eq. Ju. § 705 a, 706 and 706 a; and “they proceed (says Story) upon the distinct ground that the transaction was one exclusively between the creditor and the debtor; and that taking all the circumstances together, it was clearly the intention of the creditor to treat the debt as in equity forgiven and released to the debtor himself. But cases of this sort (he further says), are cleanly distinguishable from purely voluntary imperfect gifts or assignments of debts or other property to third persons.”
I think there, was a valid donation of the debt in this case ; and it follows that I am for affirming the decree.
The other judges concurred in the opinion of Moncure, J.
Decree affirmed.