| 92 | 333 |
| 94 | 431 |
| 92 | 333 |
| 97 | 436 |
| 92 | 333 |
| 101 | 80 |
| d101 | 259 |
| 92 | 333 |
| 103 | 483 |
| 92 | 333 |
| 106 | 801 |
| 92 | 333 |
| 107 | 423 |
| 92 | 333 |
| f108 | 184 |

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## SPOONER'S ADM'R v. HILBISH'S EX'OR AND OTHERS.

### DECEMBER 5, 1895.

1. PERSONAL REPRESENTATIVE—*Privity with Decedent—Impeachment of Decedent's Acts—Incomplete Gifts.*—The personal representative of a decedent is in privity with the decedent, and cannot impeach as fraudulent a transaction of his decedent in his lifetime. But such personal representative, nevertheless, has the right, and it is his duty, to recover as assets of his decedent's estate the subject of a gift, or voluntary assignment, which was not perfected by the decedent in his lifetime.

2. CHANCERY PLEADING—*Suits to Avoid Incomplete Gifts by Decedent—Parties.*—A creditor of a decedent, who is also his personal representative, may maintain a suit in his dual capacity to declare null an alleged assignment made by the decedent, in his lifetime, of a policy on his life, where it is charged that neither the policy nor the assignment was delivered to the assignee; that the assignment was voluntary and without consideration; and that there is a deficiency of assets to pay the debts of the decedent. He may sue in his own right, and make himself a party defendant in his representative capacity. The personal representative was a necessary party to the suit, but, under the facts of this case, it was immaterial whether the personal representative was plaintiff or defendant.

3. MULTIFARIOUSNESS—*No General Rule—Convenience—Injury to Parties—Multiplicity of Suits.*—It is impossible to lay down any universal rule as to what constitutes multifariousness, but each case must be determined by its own particular circumstances. Courts look particularly to convenience in the administration of justice, and, if this can be accomplished in the mode of proceeding adopted, the bill will not be declared multifarious, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense. This is especially true when the mode adopted will prevent a multiplicity of suits.

Statement.

4. GIFTS—*Delivery Necessary.*—A gift, to be valid, must be executed. Being without consideration, there must be an actual delivery by the donor to the donee, or to some one for him, of the thing given, or of the means of obtaining the subject of the gift, without further act of the donor to enable the donee to reduce it to his own possession. Without such delivery the gift is incomplete, and cannot be enforced against donor or his personal representative.

5. GIFTS—*Delivery—Assignment Without Delivery.*—If the assured, in a policy on his own life, intending to make a gift thereof to a third party, without consideration, executes an assignment thereof in duplicate, whereby the benefit of said policy is assigned to such third party, and delivers one of the assignments to the insurance company for its protection, and not as agent of the assignee, and fails to deliver either the policy or the assignment thereof to the assignee, this is an incomplete gift, and cannot be enforced by the assignee either at law or in equity.

Argued at Staunton.   Decided at Richmond.

Appeal from two decrees of the Circuit Court of Albemarle county, pronounced at the October term, 1894, and February term, 1895, respectively, in a suit in chancery wherein the appellee, J. J. Given, in his own right and as executor of P. C. Hilbish, was the complainant, and the appellant and others were the defendants.

*Affirmed.*

This was a suit in chancery instituted in the Circuit Court of Albemarle county by J. J. Given, in his own right and as executor of P. C. Hilbish, deceased, against M. M. Spooner, the New York Life Insurance Company, the legatees under the will of P. C. Hilbish, and others, defendants. The object of the bill was to settle the estate of P. C. Hilbish, to administer the assets and pay the debts, and especially to set aside and annul, or to declare ineffectual, an alleged assignment by P. C. Hilbish to M. M. Spooner of an insurance policy on the life of said Hilbish. The bill charged that the assignment was without consideration; that neither the

assignment nor the policy had ever been delivered to the assignee; that two-thirds of the debts were contracted before the alleged assignment, and that there was a deficiency of assets to pay the debts of the testator.

The defendant, M. M. Spooner, demurred to and answered the bill. In his answer he denies that either the assets or liabilities of P. O. Hilbish have been correctly stated in the bill, or that his estate is insolvent. He does not deny that the assignment of the insurance policy was without consideration, but he denies the insolvency of P. O. Hilbish at the time the assignment was made, and he avers the completion of the gift to him, and the delivery of the assignment. On the subject of delivery he makes the following, amongst other, statements:

" Hilbish told respondent that the copy of the assignment had been received by him from the company, and respondent then requested Hilbish to put the same in the iron safe where the policy was found, and where they kept a number of their other papers, including respondent's own life insurance policies. To this Hilbish assented. Respondent is advised that no formal delivery of said assignment was necessary to complete the transfer, but, if it were necessary, such delivery was, as stated above, accomplished; and this was the result not only regarded by respondent as effected, but also was so regarded by the said Hilbish. The said Hilbish frequently, and up to within a few months of his death, stated that he had made ample provision for respondent, referring, of course, to this assignment, as there was no other provision made by him.

" Respondent was also acknowledged as the assignee of said policy by the insurance company. Some time prior to July 31st, 1893, he received the notice herewith filed, marked Exhibit ' A,' and prayed to be read as part of this answer,

notifying him, as assignee, that a premium on said policy would soon fall due.

"After the death of Mr. Hilbish respondent received a letter from W. B. Freeman, general agent of the said company, dated the 18th of August, 1893, enclosing a form upon which respondent was asked to state his claim, and the said letter contains this sentence : ' The assignment to you is in due form.' This letter is herewith filed, marked Exhibit ' B,' and asked to be read as a part of this answer. Respondent failed to fill out the form correctly, and he received a second letter from Mr. Freeman, dated September 28, 1893, asking him to make certain corrections in said form, and stating : ' This is made necessary by the fact that the policy was assigned to you.' Said letter is also herewith filed as Exhibit ' C,' and asked to be read as a part of this answer.

"A copy of the form sent to Mr. Freeman is herewith filed as Exhibit ' D,' and asked to be read as a part of this answer."

The Circuit Court held that the alleged assignment to M. M. Spooner " was both incomplete and void," and decreed in favor of the complainant, as executor of P. C. Hilbish.

*D. Harmon* and *George Perkins*, for the appellant.

*Samuel B. Woods* and *S. V. Southall*, for the appellee.

RIELY, J., delivered the opinion of the court.

It is undoubtedly true, as a general rule, that a personal representative cannot be heard to impeach as fraudulent a transaction of his decedent in his lifetime. *Davis* v. *Swanson's Adm'r*, 54 Ala. 277; *Brown's Adm'r* v. *Finley*, 18 Mo. 375; *Blake* v. *Blake*, 53 Miss. 183; *Osborne* v. *Moss*, 7 Johns. 161; and *Dorsey* v. *Smithson*, 1 Har. & J. 61. It would be unimpeachable on such ground by the decedent

Opinion.

himself, if alive, and it is equally so by those in privity with him. The personal representative simply succeeds to the decedent's title, and hence stands on no better ground than his decedent. We are aware that there are decisions by the courts of other States to the contrary (Schouler on Executors, secs. 220 and 297, and 3 Williams on Executors 1782, and note thereto), but in the majority of the cases cited in support of the text, if not in all of them, the decision was due to the peculiar provisions of the statutes of the respective States. The statute of Virginia, in regard to fraudulent gifts, conveyances, and assignments, avoids them as to creditors and purchasers, but confers no power on the personal representative of the fraudulent debtor to impeach them. It leaves them good and valid between the parties and their privies. Code of Va., secs. 2458 and 2459.

While the general rule is as above stated, a personal representative would nevertheless have the right, and it would be his duty, to recover as assets of the estate the subject of a gift or voluntary assignment that was not perfected by the decedent in his lifetime. It is charged in the bill that the alleged assignment of the policy of insurance, which is the subject of this controversy, was voluntary and without consideration; that the money due upon it was necessary for the payment of the debts of the decedent, who was the insured; and that any intention on the part of the decedent in his lifetime to assign the policy to M. M. Spooner was never consummated, but abandoned. Under such allegation of fact, which, for the purposes of the demurrer, is to be taken as true, the executor of Hilbish had the right to sue to recover the proceeds of the policy of insurance. He brought the suit, however, not only as executor, but in his own right as a creditor of the decedent. His right as a creditor of the decedent to have an assignment of a policy that was fraudulent in law or in fact set aside for the payment of the debts, in

the case of a deficiency of assets, even though the assignment was fully executed and complete, cannot be questioned. To such a suit the personal representative of the decedent would be a necessary party. Under the particular circumstances of this case, as set out in the bill, it was immaterial whether he was made plaintiff or defendant. The plaintiff being both a creditor and the personal representative of the debtor, he might have brought the suit in his own right as creditor, and made himself in his fiduciary character a party defendant. *Rodes's Adm'r* v. *Rodes et als.*, 24 Gratt. 256, and *Booth* v. *Kinsey*, 8 Gratt. 560. He chose to bring the suit in his dual character of creditor and personal representative, as was done in *Shield's Adm'r, &c.* v. *Anderson, Adm'r, &c.*, 3 Leigh 729. In this there was no error, and certainly not under the allegations of the bill. See *Spoon* v. *Smith*, 15 S. E. Rep. 801, and *Werts* v. *Spearman*, 22 S. C. 217.

Nor is the bill obnoxious to the objection of multifariousness. It is said to be impossible to lay down any universal rule as to what constitutes multifariousness, and that the application of the rule is held to depend upon the particular circumstances of the case presented. Story's Eq. Pl., sec. 530. It was said by Judge Harrison, in delivering the opinion of this court in the recent case of the *County School Board of Albemarle County* v. *A. J. Farish's Adm'r et als.*, ante p. 156 : " Courts, in dealing with this question, look particularly to convenience in the administration of justice, and if this is accomplished by the mode of proceeding adopted, the objection of multifariousness will not lie, unless the course pursued is so injurious to one party as to make it inequitable to accomplish the general convenience at his expense." The main purpose of this suit was to administer the estate of the decedent, P. C. Hilbish ; to ascertain the debts, collect the assets, and subject them to the payment of the debts. Among the assets there was alleged in the bill to be the policy of

insurance heretofore referred to. It had been taken out by the decedent on his own life and for his own benefit. The money due upon it was needed for the payment of his debts. It was claimed by Spooner under an alleged assignment from the decedent. The assignment was contested by the plaintiff, who sought to recover and subject the proceeds of the policy to the payment of the debts. Spooner was interested in sustaining his claim to the policy under the alleged assignment; the insurance company was interested in having the proceeds of the policy paid to the proper person; and the legatees were interested in the administration of the estate, and in any surplus that might remain after the payment of the debts, including the money payable upon the policy. All the parties to the suit, the plaintiff and all of the defendants, were, therefore, directly concerned in the controversy over the policy, and it was not only convenient to settle it in this suit, but to do so would prevent a multiplicity of suits, which is a favored object in a court of equity. Where this is the case, the objection of multifariousness is not, and ought not, to be permitted to prevail. The case of *Roller* v. *Moore's Adm'r et als.*, 86 Va. 512, is a direct precedent for the maintenance of the present suit. That case was, as is this, a creditors' suit brought against the administrator and widow and heirs of a decedent, to have an account of the debts, and to subject the real and personal assets to the payment of the debts. And the main controversy there, as is the case here, was with the claimant of a policy of insurance under an assignment from the decedent in his lifetime.

This brings us to the real matter in controversy, whether Hilbish assigned to Spooner the said policy of insurance. The policy was issued to Hilbish on July 31, 1888, for his own benefit, and all the premiums that were paid on it from that time until his death, which occurred on August 5, 1893, were paid by him. It was claimed by Spooner that the policy

was assigned to him by Hilbish, and that he was entitled to its proceeds. The evidence shows that Hilbish at one time contemplated making such assignment of the policy. The rules of the insurance company require that an assignment of its policies shall be made in duplicate and sent to the company for acknowledgment, when one is returned to the insured, and the other retained by the company. Accordingly, Hilbish procured its printed forms of assignment, and on March 14, 1892, filled, signed, and acknowledged them in duplicate, and sent them to the company, which kept one and returned the other to Hilbish. But there is no evidence that Hilbish ever delivered to Spooner the duplicate assignment which was returned to him by the company. On the contrary, when asked by the executor of Hilbish, shortly after the latter's death, if he had the assignment, he admitted that he never had it. Nor was it found among the papers of Hilbish, or anywhere, after his death. Neither was the policy itself delivered by him to Spooner, but it was retained in his own possession, and found after his death along with another policy for $5,000, which he had taken out in the same company for his own benefit, and with other valuable papers belonging to him, in his private drawer in the iron safe of the hotel and restaurant kept by A. D. Wright and himself. There is, indeed, no evidence that Spooner even knew of the contemplated assignment to him by Hilbish of the policy until a few days before the latter's death, when he received notice from the company that the semi-annual premium on the policy would be due on July 31, 1893.

It was further shown by the testimony that there was no consideration for the alleged assignment, and that, if made, it was a mere gratuity, a gift from Hilbish to Spooner. The witnesses, Hazell and Given, both testify, as shown by their depositions, that this was admitted to be the case by Spooner himself.

What, then, was the effect of the act of Hilbish in respect to the assignment contemplated by him, and claimed by Spooner to have been made, of the policy, so far as it is shown to have progressed? Was an assignment of the policy made by Hilbish to Spooner?

A gift is a contract without a consideration, and, to be valid, must be executed. A valid gift is, therefore, a contract executed. It is to be executed by the actual delivery by the donor to the donee, or to some one for him, of the thing given, or by the delivery of the means of obtaining the subject of the gift, without further act of the donor to enable the donee to reduce it to his own possession. " The intention to give must be accompanied by a delivery, and the delivery must be made with an intention to give." Otherwise there is only an intention or promise to give, which, being gratuitous, would be a mere nullity. Delivery of possession of the thing given, or of the means of obtaining it so as to make the disposal of it irrevocable, is indispensable to a valid gift. 3 Minor's Inst., Pt. I., 89–93, and 3 Pomeroy's Eq. J. 1149.

In *Ewing* v. *Ewing*, 2 Leigh 337, 343, it was said by Judge Green : " No *parol gift*, without an actual delivery of the thing given, can vest in the donee any right or title in or to the thing given, or divest the right or title of the donor." Again, on p. 344, he says: " If the subject of the gift be incapable of delivery, it cannot be given by parol, but must be transferred by some writing, and a delivery of that writing."

In *Miller and Wife* v. *Jeffress et als.*, 4 Gratt. 472, 479, it was said by Judge Baldwin that there must be a delivery, " if the thing be in action, of the instrument by using which the *chose* is to be reduced into possession, as a bond, or a receipt, or the like."

In *Lee's Ex'or* v. *Boak*, 11 Gratt. 182, 185, it was said

by Judge Moncure : " All gifts, except by will, must be attended by delivery of possession to make them valid. Until such delivery, they are inchoate and revocable ; indeed, mere nullities."

And in *Yancey* v. *Field*, 85 Va. 756, 761, Judge Lewis, after reviewing the leading authorities on this subject, concludes with the declaration : " Nor are we aware of any authority for holding that a mere verbal declaration of a gift, unaccompanied by any act or circumstance clearly showing a surrender and acceptance of dominion over the article, constitutes a valid gift under any circumstances."

These judicial expressions show how necessary to the validity of a gift is an actual delivery of the thing itself, or of some equivalent of a delivery. Here there was no delivery of the policy by Hilbish to Spooner, or of any writing assigning it to him. The duplicate assignment was not left with the company or retained by it as the agent or other representative of Spooner, but only for its own protection, in the event that an actual assignment of the policy was made. Without the delivery of the policy, or of a writing assigning it, the gift was incomplete and invalid, a mere nullity, and consequently incapable of being enforced either at law or in equity.

The case of *Scott* v. *Dickson*, 108 Pa. St. 6, in the feature before us, is directly in point. There the insured executed an assignment in duplicate of a policy on his life at the time it was issued, one being lodged with the insurance company in accordance with its rules, and the other being retained by the insured, who also retained the policy, and paid all the premiums. Judge Paxson, in delivering the opinion of the court, thus expressed himself with reference to the assignment : " The delivery of the assignment to the company was not the equivalent of a delivery to Scott. The whole thing was *in fieri ;* there was no consideration, and the assignment,

Opinion.

being the voluntary act of the assured, was subject to his power of revocation. That circumstances might have arisen which would have made the revocation a matter of some trouble and expense, is not to the purpose. The true test was the right to revoke or cancel the assignment. If that existed, nothing passed to the assignee at the time of the assignment."

While the court, nevertheless, held in that case that the proceeds of the policy should be paid to the assignee, this conclusion was not reached by virtue of the assignment, but on the ground that it clearly appeared that the policy was intended for the benefit of the assignee at the time it was taken out, and that the failure to make the loss payable to the assignee when the policy was issued was the fault of the company, and not of the insured, and that the form of the transaction should not defeat his intention. But no such state of facts exists in this case. There is no evidence whatever that Hilbish intended, when he took out the policy, that it should be for the benefit of Spooner. On the contrary, there was no such purpose. The policy was taken out by Hilbish for his own benefit on July 31, 1888, and there is no evidence of any intention to assign it to Spooner, or to make him a donee of the policy, or its proceeds, until March 14, 1892, nearly four years thereafter.

Our conclusion is that, however much Hilbish may have intended at one time to assign the policy to Spooner, he never executed his intention, and that the policy remained his property, and constitutes assets of his estate, which his executor had the right to recover for the payment of his debts.

It is also assigned as error that the court, by its decree of February term, 1895, authorized and directed the insurance company to retain out of the $1,000, withheld by it out of its policy on the life of Spooner, the amount of two judgments recovered against it as garnishee by his creditors

Opinion.

in his lifetime, based upon the validity of the assignment to him of the policy on the life of Hilbish. It is not easy to see how this could be resisted. These judgments had been recovered against and paid by the company with the knowledge of Spooner. After this suit had been instituted to contest the validity of the claim of Spooner to the policy of Hilbish, and after the death of Spooner, the company paid to his executor the residue of the proceeds of the policy on the life of Spooner, upon the express agreement that it might hold back the $1,000 as indemnity against loss in the event that it should be decided that the policy on the life of Hilbish belonged to his estate, and not to Spooner. The appellant was estopped from denying, under the circumstance, the right of the company to reimburse itself out of the $1,000. All of the parties were before the court, and the issue was directly made between the company and the personal representative of Spooner by proceedings to that end.

We find no error in the decrees complained of, and the same must be affirmed.

*Affirmed.*